IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SANDI LYNN MEDEIROS, | ) | Civil No.: 3:11-cv-00386-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Linda S. Ziskin
Ziskin Law Office
P.O. Box 753833

Richard A. Sly
Attorney at Law
209 SW Oak Street, Suite 102
Portland, OR 97204

        Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902


Kathryn Ann Miller
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Sandi Medieros brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications for Disability Income Benefits (DIB) and Supplemental Security Income

(SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to

the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be reversed and the

action should be remanded to the Agency for further consideration of Plaintiff's residual

functional capacity and ability to perform light exertional level work.

## **Procedural Background**

Plaintiff filed applications for DIB and SSI on April 18, 2008, alleging that she had been

disabled since February 12, 2004 because of "Osteo-arthritis in [the] lower back."

After her claim had been denied initially and on reconsideration, Plaintiff timely

requested an administrative hearing.

FINDINGS AND RECOMMENDATION - 2

On January 4, 2010, a hearing was held before Administrative Law Judge (ALJ) Eleanor Laws.  Plaintiff; McKenna Mastrude, Plaintiff's daughter; and Richard Hincks, a Vocational Expert (VE), testified at the hearing.

In a decision filed on February 4, 2010, ALJ Laws found that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on February 25, 2011, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on December 16, 1968, and was 35 years old on the date of her alleged onset of disability.  She obtained a GED and completed a Certified Nurses Assistant program at a Community College.  Plaintiff has  past relevant work as a house cleaner and certified nursing assistant.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

FINDINGS AND RECOMMENDATION - 3

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment

is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.

20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform

relevant work he or she has done in the past.  A claimant who can perform past relevant work is

not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the

Commissioner demonstrates that a significant number of jobs exist in the national economy that

the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden,

the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## **Medical Record**

Plaintiff's opening memorandum "generally refers" the court to the results of Plaintiff's independent medical examination, but otherwise addresses the medical record in the context of her arguments.  The Commissioner similarly does not address the medical record in a separate portion of his responding memorandum, and refers to particular parts of that record in his response to the issues Plaintiff raises.  Like the parties, I will address the medical record only in the discussion of Plaintiff's arguments below.

## **ALJ's Decision**

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on February 12, 2004.

At the second step, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, asthma, degenerative joint disease of the knees, arthropathy, and anxiety disorder  were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  She found that Plaintiff retained the capacity to perform light work, except that she was limited to occasional stooping; needed to avoid moderate exposure to fumes and gases; needed to avoid concentrated

exposure to hazards; needed to work in a simple, routine work environment; required the option to stand after 45 minutes of sitting and to sit after 20 minutes of standing; needed to be allowed to shift in the sitting position; and needed to elevate her legs during normal breaks and lunch. The ALJ found that Plaintiff's  statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with this functional capacity assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform any of her past relevant work.

At the fifth step of her analysis, the ALJ found that Plaintiff could work as a hand packager and an electronics worker.  Based upon this conclusion, she found that Plaintiff was not disabled within the meaning of the Act.

### **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §  423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

FINDINGS AND RECOMMENDATION - 6

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

<u>**Discussion**</u>

Plaintiff contends that the ALJ failed to make required findings as to her obesity and skin

problems of the hand at the second step of the disability analysis, failed to properly consider

whether her impairments met or equaled a listed impairment at the third step, based her

conclusion that Plaintiff could perform light duty work on a flawed assessment of the opinions of

treating and examining doctors, and failed to provide legally sufficient reasons for discounting

her credibility and  rejecting the statements of lay witnesses.

1. **Failure to Fully Address Obesity and Skin Problems at Step Two**

At step two of her disability analysis, the ALJ found that Plaintiff's "severe" impairments

included degenerative disk disease, degenerative joint disease, asthma, arthropathy, and anxiety

disorder.  She further found that, though "[o]ther symptoms and complaints appear in the medical

treatment records periodically . . . there is nothing to show that they are more than transient or

cause significant vocational limitations."  Plaintiff contends that this analysis was flawed because

the ALJ failed to specifically address her obesity and "skin problems."  She asserts that the ALJ

should have discussed the functional effects of her obesity in combination with symptoms related

to her other impairments, and should have added handling or fingering restrictions related to skin problems on her hands in the assessment of her RFC.[1]

The Commissioner contends that Plaintiff failed to present medical evidence establishing that she is obese, and asserts that there is no evidence that the "flares of eczema" in 2005 and 2009 noted in the medical record significantly interfered with her ability to work.  I agree. Plaintiff has cited no medical diagnosis of obesity, and instead relies on only her own description of her weight in her testimony and in her applications for benefits as evidence that she is obese. The Commissioner correctly notes that an impairment must be established by "medically acceptable clinical diagnostic techniques."  SSR 96-4p; Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).  He also correctly notes that, while Plaintiff is variously referred to by her treating sources as "well-nourished," "well-appearing" at 209 pounds, "overweight," and "physically deconditioned," she has not been diagnosed by a medical source as obese in the medical record. In addition, even if the record had included a diagnosis of obesity, the ALJ's failure to discuss obesity is not significant because Plaintiff has not identified functional limitations associated with that condition which would have affected the ALJ's analysis, including assessment of Plaintiff's  RFC.  See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (obesity need not be considered where Plaintiff has not identified resulting functional limitations that would affect ALJ's analysis).

The medical record shows that the Plaintiff has occasionally experienced episodes of eczema of the hands since her childhood, and that she is free from symptoms from this condition

---

[1] In her reply memorandum, Plaintiff reiterates that she does not assert that the ALJ erred in failing to find that obesity and skin problems were "severe" impairments, but instead contends that she erred in making "*no findings whatsoever* as to these two impairments."  Plaintiff's reply memorandum at 2 (emphasis in original).

for long periods of time.  As with the question of obesity, Plaintiff has not shown evidence of functional limitations related to eczema that were significant enough to affect the ALJ's severity determination or RFC assessment.  Under these circumstances, the ALJ was not required to separately address this condition.  Even assuming that the ALJ should have discussed the condition, there is no basis for concluding that Plaintiff was prejudiced by her failure to do so because the evidence does not support the conclusion that Plaintiff's "skin problems" were significant enough to require the inclusion of additional restrictions in her RFC assessment.

## 2. **ALJ's Step Three Equivalence Analysis**

Plaintiff contends that the ALJ erred in failing to consider any of her "arguably non-severe impairments at Step 3," and in "failing to properly consider equivalence to a Listing for the impairments she did find to be severe."  She argues that the ALJ failed to "combine the functional effects of the combination of the spine and knee problems to determine whether these impairment, *together*, might equal" either Listing 1.04 for her degenerative disc disease and arthropathy or Listing 1.02 for her knee condition. [Emphasis in original.]  Plaintiff contends that the ALJ further erred in failing to consider whether her mental impairment in combination with her other impairments equaled a presumptively disabling Listed impairment.

Plaintiff argues that this action should be remanded to the Agency "for proper findings at Step 3 and for an analysis of equivalence performed with some actual thought given to the effects of a combination of a mental impairment such as anxiety, manifesting itself in this claimant in the form of panic attacks, with the pain experienced as a result of very real degenerative disc disease, degenerative joint disease, and asthma," and for consideration of the effect of pain medications on Plaintiff's focus and concentration.

FINDINGS AND RECOMMENDATION - 9

The record before the court does not support these contentions.  As the Commissioner correctly notes, an ALJ is required to discuss whether an impairment or combination of impairments equals an impairment in the Listing only if the claimant presents evidence supporting equivalence.  Burch, 400 F.3d at 693.  A Plaintiff challenging an ALJ's equivalency determination must specifically identify why her impairments or combination of impairments meet or equal a listed impairment, see Carmickle v. Commissioner, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008), and courts will not find that an ALJ has erred in determining whether combined impairments meet or equal a listed impairment unless the Plaintiff offers a plausible theory of medical equivalency.  See, Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); 20 C.F.R. §§ 404.1526, 416.926.  As the Commissioner also correctly notes, Plaintiff here has not presented a substantive, plausible theory as to why her impairments meet or equal a listed impairment, or supported her assertion that the ALJ's equivalency determination was flawed with the requisite specificity.  Under these circumstances, her challenge to the ALJ's analysis at Step 3 fails.

3. **ALJ's Evaluation of Opinions of Treating and Examining Doctors and RFC Assessment**

As noted above, the ALJ found that Plaintiff retained the capacity to perform light work, except that she was limited to occasional stooping; needed to avoid moderate exposure to fumes and gases; needed to avoid concentrated exposure to hazards; needed to work in a simple, routine work environment; required the option to stand after 45 minutes of sitting and to sit after 20 minutes of standing; needed to be allowed to shift in the sitting position; and needed to elevate her legs during normal breaks and lunch.

Plaintiff contends that the ALJ's RFC assessment was improper because it omitted limitations imposed by her treating and examining doctors.  She contends that the ALJ erred in failing to include in her RFC limitations related to her moderate problems of social functioning

and functional limitations imposed by her treating and examining doctors.   Plaintiff contends that the ALJ's conclusion that she could perform light level work was inconsistent with the opinions of Dr. James  Harris, an examining physician, and Dr. Stephen Thomas, one of her treating doctors, and that the ALJ did not provide legally sufficient support for her rejection of these doctors' opinions.

### RFC Assessment, Vocational Hypotheticals, and Evaluation of Medical Opinions

The ALJ based her assessment of Plaintiff's RFC on her evaluation of the medical evidence, including the opinions of Drs. Harris and Thomas.  In turn, she based the vocational hypothetical posed to the VE on that RFC assessment.

In order to be accurate, an ALJ's hypothetical to a VE must set out all of a claimant's limitations, and a VE's opinion that a claimant can work lacks evidentiary value if the assumptions upon which the hypothetical is based are not supported by the record.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

Because treating physicians have a greater opportunity to know and observe their patients, the opinions of treating physicians are given greater weight than the opinions of other doctors. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions,  Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining

physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

**Analysis**

**Dr. Harris**

Dr. James Harris, an examining doctor, opined that Plaintiff could stand for 3 hours and walk for two hours during an 8 hour work day.  This total of 5 hours of standing and walking is less than the approximately 6 hours of standing and walking a claimant must be able to do in order to perform the light exertional level work reflected in the ALJ's RFC.  See SSR 83-10. Significantly, the ALJ did not find that Dr. Harris overstated Plaintiff's limitations.  Instead, she gave Dr. Harris's opinion as to Plaintiff's functional limitations "some weight for being consistent with other evidence," and found that Plaintiff's condition "justifies slightly more limitations than Dr. Harris listed." [Emphasis added.]

The Commissioner has cited, and I have found in the record, no opinions of treating or examining doctors indicating that Plaintiff is capable of standing and walking for the approximately 6 hours per day required to perform light level work.  Dr. Kehrli, a non-examining Agency reviewing doctor, opined that Plaintiff could stand and/or walk up to 6 hours during an 8-hour work day and could perform light exertional level work.  The ALJ found that Dr. Kehrli's analysis was "consistent with other evidence," and gave it "great weight."  However, the opinion of a non-examining physician does not constitute "substantial evidence" that supports the rejection of a treating or examining physician's opinion.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing Pitzer v. Sullivan, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

In her reply memorandum, Plaintiff argues that this action should be remanded to the Agency for "proper consideration" of Dr. Harris's opinion, and for a reassessment of Plaintiff's RFC with the standing and walking limitations he indicated included." She contends that, because she cannot perform the light duty jobs identified in the ALJ's decision, "[f]urther vocational testimony is necessary to determine if there are sufficient numbers of sedentary jobs she can perform."

These arguments are well taken. The ALJ set out no reasons for rejecting Dr. Harris's opinion as to Plaintiff's ability to stand and walk. When an ALJ fails to provide adequate reasons for rejecting medical source opinion, the opinion is credited as a matter law. Lester, 81 F.3d at 834. Remand for an award of benefits is then appropriate if the record is fully developed, and it is clear that a finding of disability would be required if the improperly rejected evidence were accepted. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Here, the ALJ's failure to either include the limitations to which Dr. Harris opined in her assessment of Plaintiff's RFC or to provide a sufficient basis for rejecting Dr. Harris's opinion requires that this action be remanded for further proceedings, because it is not clear that Plaintiff would be disabled if she were unable to perform light duty work. Accordingly, on remand, an ALJ should reassess Plaintiff's RFC in light of limitations in standing and walking which Dr. Harris found. If Plaintiff cannot perform light duty work, assessment of Plaintiff's ability to perform sedentary jobs that exist in substantial numbers in the national economy will be required.

**Dr. Thomas**

In 2004, Dr. Stephen Thomas, a treating physician, opined that Plaintiff had a 5% permanent disability and should pursue light or sedentary work. Chart notes indicate that Plaintiff complained of severe back pain during her visits to Dr. Thomas during the next few

years.  In May, 2006, Dr. Thomas signed a "Disability Certificate" stating that Plaintiff was "unable to work due to back problems."  The ALJ gave this opinion "little weight" because "Dr. Thomas did not give a timeline for this limitation and did not match the claimant's impairments to specific functional abilities."

Plaintiff contends that these are not "clear and convincing" reasons for rejecting Dr. Thomas's opinion, and asserts that the ALJ had a duty to further develop the record if she thought that Dr. Thomas had not provided sufficient information concerning the basis of his opinion that she was disabled.  She notes that the Agency is required to  re-contact a medical source for clarification if the source's report contains an ambiguity that must be resolved, does not contain all the necessary information, or "does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R.  § 416.912(e)(1).

The ALJ here was not required to provide "clear and convincing" reasons for giving little weight to Dr. Thomas's opinion that Plaintiff was disabled, because that conclusion was contradicted by other medical opinions in the record.  Instead, she was required to provide "specific and legitimate reasons" supporting rejection of that opinion.  The ALJ satisfied that requirement: An ALJ need not accept a doctor's opinion that is brief, conclusory, and unsupported by clinical findings, Bayliss v. Barnhart, 427 F.3d 1211, 1316 (9th Cir. 2005), and is required to further develop the record only if the existing evidence is ambiguous or the record is inadequate to allow for "proper examination of the evidence."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ was not required to re-contact Dr. Thomas because the problem with his opinion was not its ambiguity but its brevity and the absence of supporting findings.  Medical opinions that are not supported by medical signs and findings are entitled to less weight than those that are supported by such evidence.  20 C.F.R. §§ 404.1527(d)(3);

416.927(d)(3).  The ALJ was entitled to give "little weight" to Dr. Thomas's conclusory opinion

that Plaintiff was disabled.

4. **ALJ's Credibiltiy Determination**

Where, as here, a claimant produces medical evidence of an underlying impairment that is

reasonably expected to produce some degree of the symptoms alleged and there is no affirmative

evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse

credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Greger v.

Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ found that Plaintiff  was not "as limited as she alleged," and that her statements

concerning the intensity, persistence, and limiting effects of her symptoms were not credible to

the extent they were inconsistent with her functional capacity assessment.

Plaintiff contends that the ALJ erred in finding that she was not wholly credible.  She

argues that the "most egregious" error in the ALJ's  credibility determination was "her backward

analysis of credibility."  Plaintiff argues that the ALJ used a "cart-before-the-horse approach,"

first assessing her RFC, and then simply concluding that any of her statements that were

inconsistent with that assessment were not credible.  She also contends that the ALJ  failed to

specifically identify the statements she found not credible, and failed to identify any medical

records that contradicted particular statements.

These arguments fail.  Inclusion of a finding that a claimant "is not credible to the extent

[his or her] testimony is inconsistent with the RFC" has become a common practice in decisions

denying applications for disability benefits.  See, e.g., Tilton v. Astrue,  2011 WL 4381745, Slip.

Op. at 30 n.5 (D. Or. 2011) (noting frequent appearance of statement in ALJ decisions).  This

FINDINGS AND RECOMMENDATION - 15

recitation  has appeared in most of the ALJs' decisions I have reviewed during the past several

years.

There is no doubt that this sort of formulaic recitation is inappropriate and inadequate if

an ALJ does not also provide sufficient reasons supporting a finding that a claimant is not wholly

credible.  See, e.g., Allen v. Astrue, 2012 WL 2921454 at 8 (D. Or. 2012) ("boilerplate"

statement that claimant is not credible to extent testimony is inconsistent with RFC used

inappropriately in many decisions; does not provide reasons required to discredit testimony).

However, in most of the decisions that I have reviewed, the ALJ's "boilerplate" reference to the

RFC analysis has not described the ALJ's method of evaluating a claimant's credibility or

explained why a claimant's testimony has been found less than wholly credible, but instead has

simply indicated the degree to which the ALJ has found that a claimant's statements are not

credible.  I have usually concluded that, though this recitation may add little, its inclusion is not a

basis for setting aside a credibility determination that is otherwise sound.

The threshold question here is whether the ALJ's reference to Plaintiff's RFC indicates

that the ALJ first assessed Plaintiff's RFC, and then simply concluded that any of Plaintiff's

assertions that were inconsistent with that assessment were not credible.  A careful review of the

ALJ's decision supports the conclusion that the ALJ did not analyze Plaintiff's credibility in this

manner, because the ALJ set out a number of clear and convincing reasons, independent of the

RFC assessment,  supporting her credibility determination.  This review also confirms that the

ALJ sufficiently specified the testimony which she discounted: She listed Plaintiff's allegations

concerning the amount of time she was "functional" each day, her need to spend at least five

hours per day lying down, her discomfort after sitting for 30 minutes, her need to take

medications before shopping, and her inability to attend activities with her children.

FINDINGS AND RECOMMENDATION - 16

The ALJ based her credibility finding in part on the absence of medical findings supporting the limitations that Plaintiff alleged. She observed that the objective medical evidence did not indicate that Plaintiff was as limited as she alleged. The ALJ also noted that Plaintiff had received only conservative treatment, was able to carry out physical activities that were inconsistent with her allegations, and had only occasionally earned wages at the "substantial gainful activity" level even before the alleged onset of her disability.

These reasons, which the ALJ supported with substantial evidence in the record, are clear and convincing. Where, as here, other reasons for an adverse credibility finding also exist, a paucity of objective medical findings undermines a claimant's credibility. See Burch, 400 F.3d at 680-81. The ALJ noted that Dr. Strum reported that an X-ray and MRI taken near the time of the alleged onset of disability were essentially normal, concluded that there were no true objective findings on examination, and opined that Plaintiff could continue working without restriction. She also noted that Dr. Lairson indicated that Plaintiff's degenerative disc disease was not significant, opined that Plaintiff's pain response to a range of motion test was out of proportion to physical findings, and recommended only physical therapy and the limited use of muscle relaxants and anti-inflammatory medications.

The conservative and routine course of treatment that the ALJ cited was significant because the amount of treatment a claimant receives is "an important indicator of the intensity and persistence" of a claimant's symptoms, 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3), and conservative treatment is a legitimate basis on which to discount a claimant's testimony concerning the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007).

The ALJ's citation to evidence that Plaintiff could walk three to five miles daily while taking methadone for pain relief in 2008 supports the credibility determination because the

FINDINGS AND RECOMMENDATION - 17

ability to engage in activities that are inconsistent with the degree of impairment alleged is relevant in assessing credibility.  E.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Evidence that Plaintiff had rarely worked at a level constituting substantial gainful activity even before her alleged onset of disability also supported the ALJ's credibility finding. As the Commissioner correctly notes, evidence of a poor work history and "little propensity to work" is a relevant factor in evaluating credibility.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ here provided clear and convincing reasons for discrediting Plaintiff's allegations as to the severity of her symptoms and limitations, and the credibility determination should not be reversed on this review.

## 5. **Assessment of Lay Witness Testimony**

Plaintiff's daughter, McKenna Mastrude; testified at the hearing, and Plaintiff's friend, Harjinder Singh Tatal; son, Patrick Medeiros; and mother, Rhonda Hickman; submitted written statements describing their observations of Plaintiff's functional capabilities.  All of these witnesses described functional limitations that were more significant than those set out in the ALJ's RFC assessment.

An ALJ must provide reasons that are "germane" for rejecting lay witness testimony. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).   Here, the ALJ found Ms. Mastrud's statements "credible to the extent reports of what has been seen and heard are accurate," but found that the medical evidence from examining medical professionals was "more reliable."  She concluded that Mr. Tatal's written statement was not a valid basis for "finding additional limitations because he is not a trained medical professional and because he sees the claimant only on occasional visits to Oregon."  The ALJ found that evidence from medical professionals was a

"more suitable basis for evaluating the effects of claimant's impairments on functional capacity" than were the observations of Plaintiff's son, and that the observations of Plaintiff's mother merited "only some weight" because she saw Plaintiff only once or twice a year.

Plaintiff contends that the ALJ erred in rejecting the lay witness statements based upon the lack of medical expertise. I agree, and would recommend that the lay witness testimony be reexamined on remand if this were the only basis upon which the ALJ discounted the lay witness statements. As Plaintiff correctly notes, lack of medical expertise is not a "germane" basis for rejecting the statements of lay witnesses. See, e.g., Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). However, where, as here, an ALJ provides "arguably germane reasons" for discounting lay witness testimony, the ALJ need not cite specifically to the record or "clearly link" the credibility determination to the reasons stated. Lewis, 236 F.2d at 512. Here, in addition to erroneously discounting the witness statements based upon a lack of medical expertise, the ALJ noted that the statements were not supported by objective medical evidence. This is a legitimate basis for discounting lay witness testimony. Bayliss, 427 F.3d at 1218. She also discounted the statements of Plaintiff's friend and mother because these witnesses saw Plaintiff only occasionally. This is a "germane" reason, because the degree to which a lay witness has the opportunity to observe a claimant is relevant in determining the weight that should be given to a lay witness's testimony. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996).

## Conclusion

A judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for further proceedings. On remand, an ALJ should re-examine Plaintiff's ability to perform the light exertional level work that Dr. Harris's evaluation

would preclude, and should either provide an adequate basis for concluding that Plaintiff retains the functional capacity to stand and walk as required to perform such work, or conduct further proceedings to determine whether Plaintiff can perform sedentary jobs that exist in substantial numbers in the national economy.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due January 14, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 27th day of December, 2012.


            /s/ John Jelderks
            John Jelderks
            U.S. Magistrate Judge